UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

LISA MARIE CATER,

                    Plaintiff,                    17 Civ. 9032 (RWS)

     -against-                                    OPINION

THE STATE OF NEW YORK, THE EMPIRE
STATE DEVELOPMENT CORPORATION,
GOVERNOR ANDREW CUOMO (In His
Individual Capacity) and
WILLIAM BALLARD HOYT a/k/a SAMUEL B.
HOYT, III (In His Individual Capacity,

                    Defendants.

--------------------------------------X

A P P E A R A N C E S:


          Attorneys for Plaintiff

          Derek Smith Law Group PLLC
          30 Broad Street
          New York, NY 10004
          By:  Paul Liggieri, Esq.


          Attorneys for Defendants
          State of New York and Governor Andrew Cuomo

          Office of N.Y.S. Attorney General
          120 Broadway, 24th Floor
          New York, NY 10271
          By:  John M. Schwartz, Esq.

**Sweet, D.J.**

Defendants State of New York (the "State") and Governor Andrew Cuomo (the "Governor") (collectively, the "Defendants") have moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss, as against them, the amended complaint ("AC") of Plaintiff Lisa Marie Cater ("Cater" or the "Plaintiff"). Based on the conclusions set forth below, the motion is granted, and the AC against the Defendants is dismissed.

## Prior Proceedings

The Plaintiff filed her initial complaint alleging sexual harassment by defendant William Ballard Hoyt, a former regional president of defendant Empire State Development Corporation ("ESDC"), between October of 2015 and October 2017. She alleged that, despite her complaints regarding Hoyt's actions, the State and the Governor, solely in his individual capacity, failed to prevent or investigate Hoyt's alleged unlawful conduct on November 18, 2017. She filed the AC on December 5, 2017 alleging eleven causes of action as follows:

1

First Cause of Action
Violation of Rights Secured by 42 U.S.C. §
1983 (Against all Defendants
(AC ¶¶ 149-155)

Second Cause of Action
(Individual Supervisory Liability - 42
U.S.C. § 1983)
(AC ¶¶ 156-164)

Third Cause of Action
(Equal Protections - 42 U.S.C. § 1983)
(AC ¶¶ 165-174)

Fourth Cause of Action
(Equal Protections - 42 U.S.C. § 1983)
(AC ¶¶ 175-178)

Fifth Cause of Action
(Monell Claim - 42 U.S.C. - Against Empire
State Corporation/Region of Buffalo)
(AC ¶¶ 179-190)

Sixth Cause of Action
(Violation of Rights Secured by 42 U.S.C.
§ 1985) (Against All Defendants)
(AC ¶¶ 191-194)

Seventh Cause of Action
Violation of Rights Secured by 42 U.S.C.
§ 1986) (Against All Defendants)
(AC ¶¶ 195-198)

As an Eighth Cause of Action for
Discrimination Under State Law (Not Against
Individual Defendants)
(AC ¶¶ 199-201)

As a Ninth Cause of Action for
Discrimination Under State Law (As Against
Individual Defendants)
(AC ¶¶ 202-204)

As a Tenth Cause of Action for
Discrimination Under State Law (As Against
Individual Defendants)
(AC ¶¶ 205-207)

As an Eleventh Cause of Action for Assault
and Battery (As Against Individual
Defendant Hoyt)
(AC ¶¶ 208-214)


Five of the eleven causes of action (the First, Fifth,
Sixth, Seventh and Eighth) appear to be asserted against the
State, among others, pursuant to 42 U.S.C. §§ 1983, 1985 and
1986 and N.Y. Executive Law § 296. The claims against the
Governor (the First, Second, Third, Sixth, Seventh, Ninth and
Tenth Causes of Action) appear to be based on his supervisory
position.


The AC alleges that Hoyt sexually harassed and
assaulted her between October 2015 and October 2017, AC ¶ 29-30,
43-53, 57, 60-68, 85-87, after she emailed ESDC seeking
assistance in finding affordable housing in October 2015, that
Hoyt responded by email, asked to meet with her, and offered to
find her a job in New York State. Id. ¶¶ 38-39. According to
Plaintiff, Hoyt then "coerced" Plaintiff into telling him where
she lived (id. ¶ 43), and then repeatedly: (a) appeared
uninvited at her home (id. ¶¶ 43-44, 48-49, 65, 67), (b)
"forcefully asserted himself against [her]" (id. at 44, 49, 87),
(c) "unlawfully groped" and "kissed" her (id.), and (d) sent her
"sexually harassing calls, texts and emails, at least one of

3

which included a nude photo of himself." Id. at 46, 47, 52, 60, 63, 65.

The AC further alleges that in or around February 2016, Hoyt "called in a political favor" and secured a position for Plaintiff as a "Management Confidential" secretary at the New York State Department of Motor Vehicles ("DMV"), id. at 54, that Hoyt repeatedly harassed her when she was at her DMV job (id. at 61, 63-65), and threatened to have her fired if she did not do as he wished (id. at 68), and that Hoyt forced her to sign a settlement agreement. Id. at 94-102.

The AC also alleges that she communicated with officials at certain New York State agencies about her complaints regarding Hoyt's conduct, but that she was dissatisfied with their responses, Id. at 113, 120, 123, 132, and that she made a number of complaints to the Office of the Governor, id. at 176-80, 104, 107-109, and was referred to various state agencies. Id. at 110, 123.

The AC further alleges that after receiving psychological counseling, the Plaintiff spoke to the media, Hoyt resigned, and that the emotional distress caused by the

Defendants prevented her from returning to work. Id. at 117,
135, 137.

The motion of the Defendants was heard and marked
fully submitted on February 28, 2018.

## The Applicable Standard

On a Rule 12(b)(6) motion to dismiss, all factual
allegations in the complaint are accepted as true and all
inferences are drawn in favor of the non-moving party. Mills v.
Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A
complaint must contain "sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A claim
is facially plausible when "the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Iqbal, 556 U.S.
at 663 (quoting Twombly, 550 U.S. at 556). In other words, the
factual allegations must "possess enough heft to show that the
pleader is entitled to relief." Twombly, 550 U.S. at 557
(internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief, 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" Munoz-Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)); Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); Williams v. Calderoni, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555 (citation and internal quotation omitted).

## I. The Claims Against the State are Barred by the Eleventh Amendment

"It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984) (citations omitted). This jurisdictional bar applies to suits in law and equity. Id. Thus, "an individual may not sue a state, its agencies or officials in

federal court, absent the state's consent or an express
statutory waiver of immunity." Holmes v. Caliber Home Loans,
Inc., No. 16 CV 3344, 2017 WL 3267766, at *5 (S.D.N.Y. July 31,
2017) (citing College Sav. Bank v. Fla. Prepaid Postsecondary
Educ. Expense Bd., 527 U.S. 666, 670 (1999)).

Here, it is undisputed that the State of New York has
not given its consent, nor did Congress make an express waiver
or carve-out of immunity with respect to the claims Plaintiff
raises under 42 U.S.C §§ 1983, 1985, or 1986. As a result, such
claims are barred, and must be dismissed. Keitt v. New York
City, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011); see also Holmes,
2017 WL 3267766, at *5 (Section 1985 and 1986 claims dismissed
against New York State agency on Eleventh Amendment grounds);
McMillan v. N.Y. State Bd. Of Elections, No. 10 CV 2502, 2010 WL
4065434, at *3 (E.D.N.Y. Oct. 15, 2010), affd, 449 F. App'x 79
(2d Cir. 2011) (summary order) (New York has not consented to
suits brought in federal court under the authority of 42 U.S.C.
§ 1983).

The Eleventh Amendment also bars federal courts from
adjudicating alleged violations of state law, absent consent.
Pennhurst, 465 U.S. at 106. It is undisputed that New York has
not waived its immunity from suit under the New York Human

7

Rights Law, of which Section 296 of the N.Y. Executive Law is a part. Rumain v. Baruch College of the City University of New York, No. 06 Civ. 8256, 2007 WL 1468885, at *2 (S.D.N.Y. May 18, 2007).

In Plaintiff's opposition ("Pl. Opp." ECF No. 15), she concedes that New York has not waived its Eleventh Amendment immunity, Pl. Opp. 19, and that no "express exception has been carved out" of Section 1983 "to override the Eleventh Amendment." Id. Plaintiff's argument is that "it should make no difference to this Court whether the claims arise under Title VII or 42 U.S.C. § 1983." Id. But this ignores the fact that, unlike Section 1983 and the New York Human Rights Law under which she is suing, Title VII contains an explicit abrogation of states' Eleventh Amendment immunity. Pl. Opp. 19-20; Fitzpatrick v. Bitzer, 427 U.S. 445, 447, 449 n.2 (1976). By contrast, under Section 1983, states are not even considered "persons" subject to liability. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Plaintiff's claims against the State, whether arising under federal or state law, must be dismissed. Pennhurst State School v. Halderman, 465 U.S. 89, 100, 106 (1984).

## II. The Claims Against the Governor Are Dismissed under 12(b)(6) as Inadequately Pled

### a. Extrinsic Evidence

As a threshold matter, Plaintiff has referred to so-called "extrinsic evidence beyond the complaint," in particular the Governor's response to a press inquiry after the commencement of this action. In his response, the Governor commented on what the State "could do differently" amid the recent wave of allegations of sexual harassment and assault against prominent men in media and politics. Pl. Opp. 7, 9-10. Such evidence may not be considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Percy v. New York (Hudson Valley DDSO), 264 F. Supp.3d 574, 580 n. 4 (S.D.N.Y. 2017). Plaintiff reports the beginning of the Governor's response to the questions, stating that "we will have policies in state government, obviously, that affect state government" but then commented that by focusing on state government the reporter was doing "a disservice to women." Pl. Opp. 10 n.2."; See Arkin, "N.Y. Gov. Cuomo tells reporter her question on sexual

9

harassment is 'disservice to women.'" NBC News, Dec. 13, 2017.
He then elaborated to make the point that the issue was
"systemic" and societal. Such extrinsic evidence is not properly
before the Court and obfuscates the issues that are germane to
the instant motion.

"To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007); see also Arar v. Ashcroft,
585 F.3d 559, 569 (2d Cir. 2009), cert. denied, 560 U.S. 978
(2010) ("Factual allegations must be enough to raise a right to
relief above the speculative level....")(quoting Twombly, 550
U.S. at 555). As the Supreme Court has explained, "the tenet
that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions"
and "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." Iqbal,
556 U.S. at 678. Moreover, "where the well-pleaded facts do not
permit the court to infer more than the mere *possibility* of
misconduct, the complaint has alleged – but it has not 'show[n]'
– that the pleader is entitled to relief." Id. at 679.

10

**b. Plaintiff's Claims under 42 U.S.C. § 1983**

To state a claim under Section 1983, the Complaint
must establish that defendant (1) acted under "color of state
law" to (2) deprive the plaintiff of a statutory or
constitutional right. Back v. Hastings on Hudson Union Free Sch.
Dist., 365 F.3d 107, 122 (2d Cir. 2004). Individual liability
for a claim of sexual harassment is only actionable under
Section 1983 as a violation of the Equal Protection Clause, see
Annis v. Cnty. of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir.
1994), if the plaintiff can show "the defendant's personal
involvement in the alleged constitutional deprivation." Grullon
v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). As the
Supreme Court made clear in Iqbal:

> In a § 1983 suit . . . - where masters do not
> answer for the torts of their servants- the term
> 'supervisory liability' is a misnomer. Absent
> vicarious liability, each Government official,
> his or her title notwithstanding, is only liable
> for his or her own misconduct.

556 U.S. at 677. The Court explicitly rejected the
plaintiff-respondent's argument that "a supervisor's mere
knowledge of his subordinate's discriminatory purpose amounts to
the supervisor's violating the Constitution." Id.

11

Before the Supreme Court's decision in Iqbal, the
Second Circuit held that such personal involvement could be
shown by evidence of the individual defendant's: (1) direct
participation in the constitutional violation, (2) failure to
remedy the wrong after being informed of it by a reporter
appeal, (3) creation or allowance of a policy or custom under
which unconstitutional practices occurred, (4) gross negligence
in supervising subordinates who committed the acts, or (5)
deliberate indifference by failing to act on information
indicating the unconstitutional acts were occurring. Colon v.
Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, Plaintiff alleges that she complained by
telephone to employees at the Governor's Office and at other
State agencies, and by e-mails and Facebook postings sent to
publicized addresses of the Governor. AC ¶ 76-80, 108-116, 118-
121, 123-124, 131. Plaintiff does not allege that the Governor
was personally aware of her complaints, that he was a direct
participant in the acts complained of, or that he negligently or
indifferently ignored them. In the absence of personal
involvement by the Governor, or sufficient allegations of the
same, Plaintiff's Section 1983 claims fail.

The AC alleges that: (a) the Governor appointed defendant Hoyt to an executive position in ESDC "with full knowledge" that Hoyt had been involved years before in a case of sexual misconduct, AC ¶ 27; (b) Hoyt often boasted of his closeness to the Governor, see id. ¶¶ 41, 78, 127, 133; and that (c) Hoyt told Plaintiff he had spoken to the "boss/Governor's Office" in some manner about Plaintiff and had been told by someone to "make this go away." Id. at 105.

These allegations fail to plausibly allege that the Governor had any knowledge of, or involvement in, Hoyt's relationship with Plaintiff or of the Plaintiff's complaints. The "make this go away" quotation Plaintiff contends was attributed by Hoyt to either the Governor or some unnamed person at the Governor's office does not adequately allege that the Governor was aware of the call, let alone that he personally made it.

Plaintiff next argues that the letters and messages left at the Governor's physical and electronic addresses create "potential factual issues as to personal involvement that cannot be resolved without development of a factual record." Pl. Opp. 12 (citing Grullon v. City of New Haven, 720 F.3d 133 (2013)).

Plaintiff relies on Grullon v. City of New Haven for the proposition that she is relieved from the requirement to plead the Governor's personal involvement here due to her attempts to communicate with the Governor. Id.; Pl. Opp. 12-13.

In Grullon, a *pro se* prisoner plaintiff submitted in response to a motion to dismiss a letter of complaint that he claimed to have addressed to the warden. The Second Circuit affirmed the District Court's dismissal of the complaint, but held that Plaintiff should have been permitted to amend his complaint to allege the letter. The Plaintiff suggests that Grullon may have changed the long-standing rule in this Circuit that a mere showing that a plaintiff has written to a supervisor is insufficient to show personal involvement. However, "[t]he better view is that the unique procedural posture of Grullon, in which the district court declined to permit a pro se plaintiff to amend his complaint, suggests that traditional concerns of solicitude for pro se plaintiffs and Fed. R. Civ. P. 15's liberal amendment policy underlay the Second Circuit's decision, rather than a desire to modify the personal involvement analysis." McIntosh v. United States, No. 14 Civ. 7889, 2016 WL 1274585, at *16 (S.D.N.Y. Mar. 31, 2016); see also Huggins v. Schriro, No. 14 Civ. 6468, 2015 WL 7345750, at *4 (S.D.N.Y. Nov. 19, 2015), adopted 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016)

14

(receipt of letters or grievances insufficient to impute personal involvement); Ciaprazi v. Fischer, No. 13 Civ. 4967, 2015 WL 1315466 (S.D.N.Y. 2015) (Grullon has not changed the law; where plaintiff conceded superintendent ignored plaintiff's letter, dismissal of claim recommended).

There are no factual allegations to support an inference that the Governor was aware of Plaintiff's telephone and email communications to his office. In fact, the AC presents allegations to the contrary—that her complaints were referred to other personnel at other agencies (Office of General Services, which referred her claim to the State's Inspector General), with whom she conferred, and ultimately to the Joint Commission on Public Ethics ("JCOPE") with whom she met. AC ¶¶ 120, 123, 131.

The fact that someone working in the Governor's office or staff monitoring his correspondence forwarded the complaints to other officials for handling does not suggest the personal involvement necessary to adequately allege liability under Section 1983. See Lloyd v. City of New York, 43 F. Supp. 3d 254,268 (S.D.N.Y. 2014) (citing, inter alia, Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997) (official who receives plaintiff's letter and refers it to a subordinate for response not deemed personally involved in subject matter of letter).

In opposition, Plaintiff alleges not only that the Governor was personally involved as a supervisory defendant, but also newly alleges that the Governor was directly involved in the alleged constitutional and statutory violations. Pl. Opp. 10-11. Although the AC alleged that Hoyt told Plaintiff "that he had spoken with his boss/Governor's Office and that Hoyt was told to "make this go away," AC ¶ 105 – an allegation that does not identify to whom in "the Office" Hoyt spoke—in opposition, Plaintiff eliminates "the Office." Pl. Opp. 10-11.

This allegation, which is not contained in the AC, is conclusory, and, hence, insufficient to adequately allege the Governor's personal involvement. Plaintiff's original allegation of what Hoyt told her about his contact with the Governor's office does not plausibly allege personal involvement by the Governor. See, e.g., Rode v. Dellarciprete, 845 F.2d 1195, 1207-8 (3d Cir. 1988) (transmitting a complaint to governor's office of administration insufficient basis to impose liability). Samuels v. Fischer, 168 F. Supp.3d 625, 637 (S.D.N.Y. 2016) ("Second Circuit case law makes clear that a plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing"); Gonzalez v. Sarreck, No. 08 Civ. 3661, 2011 WL 5051341, at *14 (S.D.N.Y. Oct. 24, 2011)

16

("Broad, conclusory allegations that a high-ranking defendant
was informed of an incident are ... insufficient.") (collecting
cases); Bogart v. NYC Law Dep't., No. 00 00 Civ. 7417, 2001 WL
1631986 at *2, 4 (S.D.N.Y. Dec. 20, 2001) (plaintiff's
allegations that he sent emails to supervisor and Equal
Employment Officer complaining of retaliation insufficient to
demonstrate personal involvement).

Plaintiff contends that the Governor is subject to
individual supervisor liability under Section 1983 because of
her complaints to him by telephone, email and Facebook, and her
experience in the investigative bureaucracy of New York.
Plaintiff's claim that "she was led to believe . . . that she
was directly contacting the Governor," Pl. Opp. 10, however, is
contradicted by her substantive dealings with numerous other
State employees and her admission that she was told by the
Office of General Services lawyer who had referred her claim
that the only assistance staff could offer was monitoring the
Governor's website because they were low-level employees. Pl.
Opp. 11-12 n. 3; AC ¶ 121. That a minority of the JCOPE
Commissioners had been appointed by the Governor (Pl. Opp. 6-7)
does not impute the Governor in investigations or deliberations
of that body, just as his appointment of Hoyt to a position with
the Empire State Development Corporation does not, without more,

17

suggest personal involvement in Hoyt's actions. See Roberts, 2015 WL 1285723, at *5.

Plaintiff has contended that she should be given an opportunity to conduct discovery, particularly as to Hoyt's communications with the Governor's office. Pl. Opp. 11, 13. But "[t]he mere filing of a complaint does not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'...." A plaintiff who has failed to adequately state a claim is not entitled to discovery. Jacobs v. Tannenbaum Helpern Syracuse & Hirschritt, No. 15 Civ. 10100, 2017 WL 432803, at *3 n. 2 (S.D.N.Y. Jan. 30, 2017) (citing Iqbal, 556 U.S. at 678-79 and Main St. Legal Servs., Inc. v. Nat'l Sec. Council, 811 F.3d 542, 567 (2d Cir. 2016).

Plaintiff does not dispute that "the bare fact" that a defendant occupies a high position in the hierarchy is insufficient to subject him to liability under 42 U.S.C. § 1983. Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995). Instead, she argues that the Governor created a "policy or custom" that allowed Hoyt to sexually harass her. Pl. Opp. 8. Plaintiff alleges that since the Governor was aware that a prior allegation of inappropriate sexual conduct was levied against Hoyt, the Governor's appointment of him violated her

18

constitutional rights. Pl. Opp. 8-9. However, without more, the Governor's personal liability is not established by the allegation that the Governor appointed Hoyt. See Robert v. New York, No. 12 Civ. 0046, 2015 WL 1285723, at *5 (N.D.N.Y. Mar. 20, 2015) (citing Madsen v. Washington, No. C12-5928, 2013 WL1499145, at *4 (W.D. Wash. Mar. 13, 2013) (allegation that Governor Cuomo appointed individuals alleged to have violated plaintiff's rights is insufficient to allege personal involvement).

Plaintiff also bases her Section 1983 claims against the Governor on his alleged appointment of Hoyt to a position with the Empire State Development Corporation in 2011, when he was allegedly aware that Hoyt had been involved in "a case of sexual misconduct as against female interns/employees" in 2008. AC ¶ 27. This event is described by Plaintiff's counsel, vaguely, as "inappropriate sexual conduct with an intern in the New York State Assembly." Pl. Opp. 9. There is no allegation, however, of any misconduct known to the Governor involving Defendant Hoyt in his current position, or, more generally, after the 2008 incident.

In the absence of adequate allegations of personal involvement, Plaintiff's claims against the Governor under

Section 1983 fail. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of' entitlement to relief.'").

### c. Plaintiff's Conspiracy Claim under 42 U.S.C. § 1985

"To state a claim under § 1985(3), . . . plaintiff must show '[i] a conspiracy; [ii] for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws; [iii] an act in furtherance of the conspiracy; [iv] whereby a person is deprived of any right of a citizen of the United States.'" Clemmons v. Hodes, No. 15 Civ. 8975, 2017 WL 4326111, at *12 (S.D.N.Y. Sept. 26, 2017) appeal filed sub nom. Clemmons v. Feltz (Oct. 24, 2017) (quoting Brown v. City of Oneonta, 221 F.3d 329, 341 (2d Cir. 2000). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007)).

Plaintiff has not adequately alleged a "conspiracy" in which the Governor participated. The Plaintiff's only

suggestion that the Governor may have known who she was is based solely on defendant Hoyt's alleged statement that he had "spoken with his boss/Governor's office," and that he was told to "make this go away." If the allegation is meant to suggest that defendant Hoyt spoke to some unnamed person in the Governor's Office, it fails to show any personal involvement by the Governor. If it is meant to suggest that Hoyt claimed to have spoken to the Governor directly, it could be understood as a direction to Hoyt to make amends to Plaintiff rather than demonstrating a conspiracy. Under either interpretation, Plaintiff fails to adequately allege that the Governor participated in a conspiracy sufficient to trigger Section 1985 liability.

Nor do Plaintiff's conclusory allegations suggest that the Governor and Defendant had a "*tacit* understanding to carry out the prohibited conduct." Thomas v. Roach, 165 F.3d 137 (2d Cir. 1999) (emphasis added). Other than the conclusory allegation regarding Hoyt's phone call, Plaintiff has not alleged any facts to support such an understanding or conspiratorial relationship between Hoyt and the Governor. This Court will not infer a conspiracy where one has not been alleged to exist.

**d. Plaintiff's Neglect to Protect Claim under 42 U.S.C. §
1986**

Since Plaintiff's Section 1985 conspiracy claim is not
"plausible on its face," see discussion supra, her claim of
neglect or refusal to prevent a Section 1985 conspiracy under 42
U.S.C. § 1986 must fail as well.

A Section 1986 claim must be predicated on a valid
Section 1985 claim and, in the absence of such a predicate
claim, must be dismissed. *Brown*, 221 F.3d at 341; L.K. v.
Sewanhaka Central High School Dist., 641 F. App'x 56, 59 (2d
Cir. 2016).

**e. Federal Retaliation Claim**

There are no factual allegations to support
Plaintiff's conclusory assertions that the Governor either
retaliated against her for complaining about Hoyt's actions, see
AC ¶ 203, or that he aided and abetted anyone else in such
actions or retaliation, see id. ¶ 206. Plaintiff characterizes
the Governor as both a primary actor and an aider and abettor,
thus impossibly accusing him of aiding and abetting his own
conduct. See Strauss v. New York State Dep't of Education, 26

A.D.3d 67, 73 (3d Dep't 2005) (individuals cannot be held liable for aiding and abetting their own alleged violations). As concluded *supra*, there is no support in the AC even for the conclusory assertions that the Governor was aware of the alleged wrongs. See <u>Boliak v. Reilly</u>, No. 153941/201 6, 2017 WL 4236170, at *5 (Sup. Ct. N.Y. Cty. Sept. 22, 2017) (in claim against parochial school, Archdiocese, Cardinal and others, Cardinal held not liable for aiding and abetting in absence of factual allegations to support conclusory claims).

In a retaliation claim, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim, <u>Vega v. Hempstead Union Free School District</u>, 801 F.3d 72, 88 (2d Cir. 2015), and such a claim requires that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or action. <u>Univ. of Texas Med. Ctr. V. Nassar</u>, 133 S. Ct. 2517, 2532 (2013). Here, Plaintiff's harassment by Hoyt is alleged to have commenced prior to January 2016, AC ¶ 47, and at the latest when she began working at the DMV in February 2016, id., ¶ 54. Her alleged complaints to the Governor's Office began July 2016, id. ¶ 77, her confrontation with Hoyt is alleged to have occurred in August 2016, id. ¶ 85-87, and her alleged acceptance of $50,000 from Hoyt occurred in or about October 2016, id. ¶ 92. Thus, the conduct about which

she is complaining started well before her complaints and could not have been in retaliation for them. To the extent Hoyt's alleged harassing behavior took place after her complaints, it was a continuation of the previously commenced conduct and there can be no plausible conclusion that it was in retaliation for those complaints.

The Plaintiff also includes vague allegations of "retaliation" and "retaliatory actions" by the Governor. AC ¶¶ 154-55, 168. However, the Governor's lack of personal involvement in any of the events alleged are dispositive of and fatal to any retaliation claim—just as they are in the claims of underlying discrimination. Further, vicarious liability does not apply to Section 1983 suits. See Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) as amended (Feb. 24, 2016) ('"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority' and '"[r]ather, the personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'") (first quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); and then quoting Farrell v. Burke, 449 F .3d 470, 484 (2d Cir. 2006)); see also Edwards v. Khalil, No. 12 Civ. 8442, 2016 WL 1312149, at *28 (S.D.N.Y. Mar. 31, 2016) (noting that to

demonstrate individual liability under Section 1983, a plaintiff must show that each individual was personally involved in the retaliation and acted with discriminatory purpose).

### f. State Law Claims

The Plaintiff asserts claims against "Individual Defendants" under N.Y. Exec. Law §§ 296(7) and (6) respectively (part of the New York Human Rights Law). See AC Ninth and Tenth Causes of Action. She contends those claims (as well as the Eighth Cause of Action, which is not pleaded against the Governor) are based upon "the supplemental jurisdiction of this Court," citing United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) and 28 U.S.C. § 1367. AC ¶ 2.

In Gibbs, the Supreme Court recognized "that [the district court's] pendent jurisdiction is a doctrine of discretion, not of plaintiff's right," and that such discretion should be exercised with a view to 'judicial economy, convenience and fairness to the parties." Id. at 726. In Itar-Tass Russian News Agency v. Russian Kurier, Inc., the Second Circuit determined that 28 U.S.C. § 1367, which was added to the United States Code in 1990, alters the discretionary analysis of Gibbs, such that while it confers on the district court

jurisdiction to consider supplemental claims under state law,
the court may only decline to consider state law claims in
limited circumstances, one of which is if "in exceptional
circumstances, there are other compelling reasons for declining
jurisdiction." Id. at 446-47; 28 U.S.C. § 1367(c)(4); 140 F.3d
442 (2d Cir. 1998). For a Court to decline to hear state law
claims based on an "exceptional circumstances" finding, the
"circumstances [must be] quite unusual." Executive Software, 24
F.3d 1545, 1558 (9th Cir. 1994).

Even if this Court were to find an absence of
"exceptional circumstances" and exercise its supplemental
jurisdiction to review Plaintiff's state law claims, they must
be dismissed as a matter of law because plaintiff fails to
allege any acts by the Governor that would constitute either
retaliation, or aiding and abetting in such conduct. See id.
§ 296(6) and (7).

Although the New York Human Rights Law includes
protections in certain relationships other than employment, see,
e.g., id. §§ 296(2), Plaintiff has asserted claims under State
law arising only from her status as a former employee. See,
e.g., AC Eighth Cause of Action (citing N.Y. Exec. Law § 296(1),
which applies only to discriminatory practices by employers,

labor organizations, employment agencies or joint labor-management committees). Plaintiff's retaliation and aiding and abetting claims are therefore dependent on her ability to establish an employment relationship with the Governor, which she has failed to do:

> In determining whether a defendant can be held liable as a plaintiff's employer under the New York Human Rights Law ("NYHRL"), courts consider the following elements: (1) whether the proposed employer had the power of the selection and engagement of the employee; (2) whether the proposed employer made the payment of salary or wages to the employee; (3) whether the proposed employer had the power of dismissal over the employee; and ( 4) whether the proposed employer had the power to control the employee's conduct.

Herman v. Blockbuster Entertainment Group, 1 8 F. Supp. 2d 304, 313 (S.D.N.Y. 1 998), aff'd, 182 F.3d 899 (2d Cir. 1 999), cert. denied, 528 U.S. 1 020 (1999); accord Hargett v. Metropolitan Transit Authority, 552 F. Supp. 2d 393, 405 (S.D.N.Y. 2008).

Nor has Plaintiff adequately alleged any evidence that supports a finding that the Governor's conduct satisfies any of the NYHRL factors. To the extent she contends that she was an employee of the State, the Eleventh Amendment bars her claims against the State, as demonstrated *supra*. An aiding and abetting claim against the Governor pursuant to N.Y. Exec. Law § 296(6)

27

must therefore fail with them, since "a predicate for aider and abettor liability under this provision is employer liability." Deng v. N.Y.S. Office of Mental Health, No. 13 Civ. 6801, 2015 WL 221046, at *5 (S.D.N.Y. Jan. 15, 2015).

As Judge Failla recognized in Gorman v. Covidien, 146 F. Supp.3d 509 (S.D.N.Y. 2015), "[a] supervisor is an 'employer' for purposes of establishing liability under the [NYHRL] if that supervisor "actually participates in the conduct giving rise to [the] discrimination." Id. at 522 (quoting Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004)). The requirement of personal involvement applies to the aiding and abetting provision of the Human Rights law as well. Id. (citing Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 n.10 (2d Cir. 2011). As demonstrated above, the AC does not plausibly allege the Governor's personal involvement in the alleged wrongdoing. Accordingly, the state law claims are dismissed.

## Conclusion

Based on the conclusions set forth above, the motion of the Defendants is granted and the AC is dismissed as to Defendants, with prejudice.

Leave to replead within twenty days is granted.

It is so ordered.

**New York, NY**
**June** 2 /, **2018**

_____

**ROBERT W. SWEET**
**U.S.D.J.**