UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

LISA MARIE CATER,

                   Plaintiff,            17 Civ. 9032

     -against-                   OPINION

THE STATE OF NEW YORK, THE EMPIRE
STATE DEVELOPMENT CORPORATION,
GOVERNOR ANDREW CUOMO
(In His Individual Capacity),
and WILLIAM BALLARD HOYT a/k/a
SAMUEL B. HOYT, III (In His
Individual Capacity),

               Defendants.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

A P P E A R A N C E S:

       Attorneys for Plaintiff

       DEREK SMITH LAW GROUP, PLLC
       One Penn Plaza, Suite 4905
       New York, NY 10119
       By:  Paul Liggieri, Esq.

       Attorneys for Defendants

       OFFICE OF N.Y.S. ATTORNEY GENERAL
       120 Broadway, 14th Floor
       New York, NY 10271
       By:  John M. Schwartz, Esq.

**Sweet, D.J.**

Defendant New York State Urban Development Corporation, doing business as Empire State Development ("ESD") has moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint of plaintiff Lisa Marie Cate ("Cater" or the "Plaintiff'). Based upon the conclusions set forth below, the motion is granted and the Amended Complaint is dismissed.

**Prior Proceedings**

Cater filed her Complaint on November 18, 2017 and her Amended Complaint on December 5, 2017 alleging sexual harassment and violation of federal civil rights law and state employment law against defendants, The State of New York (the "State"), Governor Andrew Cuomo (the "Governor"), ESD, William Ballard Hoyt ("Hoyt" or "Defendant Hoyt").

By opinion of June 21, 2018 (Dkt. 54), the Amended Complaint against the State and the Governor was dismissed.

The instant motion by ESD was heard and marked fully submitted on July 11, 2018.

**The Amended Complaint**

The Plaintiff has alleged violations of 42 U.S.C. §1983, 1985, 1986, violations of the New York State Executive Law based on the actions of the State, ESD, The Governor and Defendant Hoyt. The Amended Complaint contains the following allegations:

Plaintiff was hired with the NYS Department of Motor Vehicles ("DMV") in or around February of 2016. (Am. Cplt ¶ 54). Plaintiff was specifically hired through a process otherwise known as "Management Confidential." Id. at ¶ 56. Management Confidential is used as a vehicle to dispense patronage jobs to friends of the Governor and other NYS politicians. (Am. Cplt. ¶ 56). Defendant Hoyt, then Regional President of ESD used his authority at ESD and his relationship with Governor Cuomo, in order to leverage a job for the Plaintiff. (see generally Am. Cplt).

Throughout the Plaintiff's employment with Defendants, it is alleged that Defendant Hoyt subjected the Plaintiff to

2

sexual harassment, discrimination as well as a severe and/or
pervasive hostile work environment. The Amended Complaint
alleges that ESD, Defendant Hoyt, and other members of the State
used their badge of authority and acted under the color of law.

In or around July of 2016, the Plaintiff began her
attempts to contact Defendant Cuomo. (Am. Cplt ¶ 77).
Plaintiff's correspondence to the Governor included but was not
limited to correspondence by email, telephone and text message.
(Am. Cplt ¶ 77-80, 103-116). After unsuccessfully trying to
contact the Governor himself, Plaintiff was referred to The NYS
Join Commission on Public Ethics ("JCOPE"). (Am. Cplt ¶123).
Defendant Hoyt, using his authority as a powerful public figure
at Empire State Development, threatened the Plaintiff as he had
many times before and advised her that JCOPE would never help
her because he was "too powerful" and in "direct contact with
the Governor." (Am. Cplt. ¶127).

**The Applicable Standard**

**Rule 12(b)(6)**

On a Rule 12(b)(6) motion to dismiss, all factual
allegations in the complaint are accepted as true and all

inferences are drawn in favor of the pleader. Mills v. Polar
Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint
must contain "sufficient factual matter, accepted as true, to
'state a claim to relief that is *plausible on its face.*'"
Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (emphasis added). A
claim is facially plausible when "the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Iqbal,
556 U.S. at 663 (quoting Twombly, 550 U.S. at 556). In other
words, the factual allegations must "possess enough heft to show
that the pleader is entitled to relief." Twombly, 550 U.S. at
557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon
information and belief 'where the belief is based on factual
information that makes the inference of culpability plausible,'
such allegations must be 'accompanied by a statement of the
facts upon which the belief is founded.'" Munoz-Nagel v. Guess,
Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y.
Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d
110, 120 (2d Cir. 2010)); Prince v. Madison Square Garden, 427
F. Supp. 2d 372, 384 (S.D.N.Y. 2006); Williams v. Calderoni, 11
Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)).

4

The pleadings, however, "must contain something more than . . .
a statement of facts that merely creates a suspicion [of] a
legally cognizable right of action." Twombly, 550 U.S. at 555
(citation and internal quotation omitted).

**The § 1983 Claim is Dismissed**

Plaintiff's First Cause of Action seeks relief against
ESD under Section 1983 on the sole basis that ESD employed Hoyt.
The Supreme Court has held that a government entity cannot be
liable under § 1983 on a respondeat superior theory. In the
Section 1983 context, a government entity "cannot be held liable
solely because it employs a tortfeasor." *Monell v. Dep't of Soc.
Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)(government
entity "cannot be held be held liable under § 1983 on a
respondeat superior theory.").

To state a plausible Section 1983 claim against a
government entity, a plaintiff must do more than allege the
defendant employed the alleged wrongdoer; she must prove "that a
municipal policy of some nature caused a constitutional tort."
*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

5

But because the Plaintiff does not allege any facts to establish that she was an ESD employee or had any other relationship with ESD, respondeat superior is the only discernible theory under which the Amended Complaint could state a § 1983 claim against ESD. The relevant factual allegations relate solely to Hoyt's position at ESD. The Plaintiff alleges: "Defendant Hoyt . . . [was] Senior Vice President for Regional Economic Development at the Empire State Development Corporation." Am. Compl. ¶ 27.

The Amended Complaint alleges: "Defendant Hoyt . . . had the power as Regional President of the Empire State Development Corporation to hire, fire[,] and supervise Plaintiff Cater" at the DMV. Am. Compl. ¶ 61 (emphasis added).

Such allegations do not establish an employment relationship between plaintiff and ESD. *See Moore v. City of N.Y.*, 2010 WL 742981, at *5 (S.D.N.Y. Mar. 2, 2010) (dismissing plaintiff's § 1983 claim against the city where plaintiff "was an employee of the DOE and [did] not claim that she was ever employed by the City or that the City took any action that affected her employment," noting the City and the DOE were "distinct governmental entities").

Because the Supreme Court has held that respondeat superior does not support a Section 1983 claim against a government entity, the Plaintiff's First Cause of Action against ESD is dismissed.

**The Monell Claim is Dismissed**

To state a claim against a government entity under a theory of *Monell* liability, a plaintiff must allege an "official policy" by the entity. This includes: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). A plaintiff satisfies the "official policy" element only where "a 'municipal policy of some nature caused a constitutional tort.'" *Roe*, 542 F.3d at 36 (quoting *Monell*, 436 U.S. at 691). The government agent's actions must implement, rather than merely frustrate, a government policy. Id. at 37. The plaintiff must allege that "through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." Id.

The Amended Complaint does not allege that ESD had an official policy that caused a constitutional injury to Plaintiff. The only allegations referencing a policy, practice, or a custom of ESD appear in the paragraphs recounting the elements of plaintiff's Fifth Cause of Action. Those allegations fall into two categories: (1) recitation of legal phrases and elements of a *Monell* claim; and (2) conclusory statements unsupported by factual allegations.

The Plaintiff has alleged ESD had a policy through which "supervisors such as Defendant Hoyt" were permitted to, among other things, "unlawfully retaliate and create a hostile work environment against Plaintiff." Am. Compl. ¶ 183. However, Plaintiff does not allege Hoyt was her supervisor, or that she was employed by ESD. Plaintiff claims ESD used these alleged policies, customs, and practices "as a means to suppress complaints made on a protected basis." Id. ¶ 184. But Plaintiff does not allege she complained to ESD about Hoyt, making her allegation of a policy to "suppress complaints" irrelevant to her Section 1983 claim.

The Amended Complaint's remaining allegations with respect to *Monell* are conclusory and inadequate. The Plaintiff alleges that "[n]otwithstanding knowledge of such an unlawful de

facto unwritten policy," ESD "ha[s] not taken steps to terminate this policy" and "do[es] not properly train employees" in discrimination and retaliation. Am. Comp. ¶ 186. However, the Amended Complaint does not allege facts to support a plausible claim that an ESD "policy" for handling employment- or harassment-related complaints caused plaintiff's alleged injuries. See *Moore*, 2010 WL 742981, at *6 ("Allegations that a defendant acted pursuant to a 'policy' or 'custom' without any facts suggesting the policy's existence, are plainly insufficient [to support a *Monell* claim].") (quotation marks and citation omitted).

In addition, only government officials "who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quotation marks and citation omitted). Thus, a plaintiff "must show that the official had final policymaking power." *Roe*, 542 F.3d at 37. It is not enough that the official had some final policymaking authority; rather, the "critical inquiry" is "whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." Id. at 37. "The critical characteristic of final policymakers when employment is at issue is whether the . . . official has the authority to

9

formulate the rules governing personnel decisions rather than the authority to make decisions pursuant to those rules — e.g., the hiring and firing of subordinates." *Chin v. N.Y. City Hous. Auth.*, 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008).

The Plaintiff offers no factual allegations — other than reciting Hoyt's former position at ESD — to suggest Hoyt had final policymaking authority of any kind related to human resources, personnel policies, or handling harassment complaints at ESD. See Am. Compl. ¶¶ 27, 61.

Any policymaking authority Hoyt might have had relating to economic development in Western New York, or any of ESD's other regional initiatives, does not support Plaintiff's *Monell* claim. The conduct alleged in the Amended Complaint relates to sexual harassment and employment discrimination. Thus, to plead a *Monell* claim against ESD based on Defendant Hoyt's conduct, Plaintiff would need to allege that Defendant Hoyt had final policymaking authority with respect to ESD's policy for handling sexual harassment and discrimination complaints, or for making personnel decisions. The Amended Complaint contains no such allegations.

The Plaintiff has pled no facts to suggest that Defendant Hoyt had authority over creating personnel policy at ESD. This deficiency requires dismissal. See *Santos v. N.Y. City*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) (dismissing *Monell* claim where plaintiff "plead[ed] no facts to suggest that [the municipal official] was a municipal policymaker"). As this Court held, the "critical characteristic" of a final policymaker when employment is at issue is a "municipal official [who] has authority to formulate the rules governing personnel decisions." See *Chin v. N.Y. City Hous. Auth.*, 575 F. Supp. 2d 554, 562 (S.D.N.Y. 2008). The ability to influence employment decisions, if it exists, is far different from authority to "formulate the rules governing personnel decisions." Id.; see *Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 425-26 (2d Cir. 2004).

Plaintiff has contended that Defendant Hoyt was a final policymaker because he worked at ESD, whose mission is to facilitate business growth and job creation, and because he assisted with her job placement at the Department of Motor Vehicles ("DMV"). *See* Pl.'s Mem. of Law in Opp'n to Def. Empire State Dev.'s Mot. to Dismiss, dated June 15, 2018 ("Pl.'s Opp'n"), at 11. However, neither Defendant Hoyt's assistance in getting plaintiff a job at the DMV, nor ESD's mission, is relevant to the question set forth in *Chin* that is critical to

analyzing a *Monell* claim: whether Defendant Hoyt had final authority for employment policies at ESD.

The Plaintiff urges the Court to follow Fifth Circuit authority specifically rejected by the Second Circuit. *See* Pl.'s Opp'n, at 13-14; *Roe v. City of Waterbury*, 542 F.3d 31, 40-41 (2d Cir. 2008) ("[W]e decline to follow the Fifth Circuit's reasoning with respect to municipal liability under § 1983."). In addition, the holding in each cited case depended on the fact that "in Texas, the county sheriff is the county's final policymaker in the area of law enforcement." See *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996); *Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 136 (5th Cir. 1990). Even if this Circuit had adopted the Fifth Circuit's approach, Plaintiff would still have to establish that Defendant Hoyt was a final policymaker, which she has not done.

Because the Plaintiff fails to allege any facts suggesting Defendant Hoyt had authority to create personnel policy for ESD, she cannot allege that Defendant Hoyt was a final policymaker, and her Section 1983 claim against ESD is dismissed.

**The § 1985 Claim is Dismissed**

Plaintiff contends that her Section 1985 claim should survive because it is not an employment discrimination claim brought under Title VII. Pl.'s Opp'n, at 14-16. However, this Court has held that Section 1985 cannot serve as a vehicle to redress Title VII claims or other employment-related claims "covered or closely related to th[ose] covered by Title VII." *Ladson v. Ulltra E. Parking Corp.*, 853 F. Supp. 699, 704 (S.D.N.Y. 1994). The Plaintiff has referred to her claims as employment discrimination claims and the Amended Complaint is full of phrases key to Title VII claims, including hostile work environment and retaliation. See Pl.'s Opp'n, at 15-16; Am. Compl. ¶¶ 151, 154, 155. Also, she alleges a claim against ESD under a NYHRL provision that is "analytically identical" to a Title VII claim. See Am. Compl. ¶¶ 199-201; *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008). Given the substantive similarity of Plaintiff's employment-based claims to those under Title VII, Plaintiff may not maintain civil rights conspiracy claims based on those allegations. See *Great Am. Fed. Savs. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372-78 (1979); *Ladson*, 853 F. Supp. at 704.

The Amended Complaint alleges that the Defendants conspired to discriminate and retaliate against the Plaintiff based on her gender.

First, the Supreme Court has held that employment discrimination is not actionable under § 1985(3). See *Great Am. Fed. Savs. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372-73 (1979). The Court explained: "cases of alleged employment discrimination are subject to a detailed administrative and judicial process [under Title VII that is] designed to provide an opportunity for nonjudicial and nonadversary resolution of claims." Id. Title VII's "comprehensive plan" expressly sets time limitations for administrative and judicial filings and "prevents immediate filing of judicial proceedings" at several points. Id. at 373-74. "If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law" and even "completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." Id. at 375-76.

Following *Novotny*, this Court held Title VII claims are not proper predicates for civil rights conspiracy claims. *See Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 533

(S.D.N.Y. 1999); *Ladson v. Ulltra E. Parking Corp.*, 853 F. Supp. 699, 704 (S.D.N.Y. 1994). This Court clarified that *Novotny*'s holding applies to both employment discrimination claims explicitly mentioning Title VII, and those "covered or closely related to th[ose] covered by Title VII." *Ladson*, 853 F. Supp. at 704.

Plaintiff seeks relief for the injuries she "has suffered as a result of being sexually harassed, discriminated[,] and retaliated against by her former employer on the basis of gender discrimination, sexual harassment[,] and retaliation." Am. Compl. ¶ 2

Plaintiff's failure to mention Title VII does not relieve her of the required "detailed administrative and judicial process" of filing a civil rights claim directly in federal court. *See Novotny*, 442 U.S. at 372-73.

In addition, to plead a § 1985(3) claim, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; and

15

> (3) an act in furtherance of the conspiracy; (4)
> whereby a person is either injured in [her]
> person or property or deprived of any right of a
> citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085,
1087 (2d Cir. 1993). In addition, the conspiracy must be
motivated by "some racial or perhaps otherwise class-based,
invidious discriminatory animus behind the conspirators'
action." Id. at 1088 (quotation marks and citation omitted).


The Plaintiff "must provide some factual basis
supporting a meeting of the minds, such that defendants entered
into an agreement, express or tacit, to achieve the unlawful
end." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009)
(quotation marks and citation omitted). "Broad allegations of
conspiracy are insufficient . . . ." Id. If Plaintiff "does not
allege the 'meeting of the minds' that a plausible conspiracy
claim requires" and, instead, merely alleges that her requests
"were ignored," her § 1985 claim must be dismissed. *See* id.
Plaintiff has not done that.


Plaintiff offers only conclusory assertions that an
unlawful conspiracy existed and alleges nothing to suggest ESD
was part of any such conspiracy. She alleges that Defendant Hoyt
sexually harassed her, that she complained about the harassment

to individuals unrelated to ESD, that nobody responded to her complaints, and that ESD employed Hoyt. Am. Compl. ¶¶ 27, 43-53, 76-80, 91, 121-32. The Plaintiff alleges an unlawful conspiracy existed among the defendants to violate her civil rights. These broad and conclusory allegations of conspiracy — supported only by her claim her complaints were ignored — comprise precisely the sort of § 1985 claim courts have dismissed as implausible. The Amended Complaint's Sixth Cause of Action against ESD is dismissed.

**The § 1986 Claim is Dismissed**

The Plaintiff has alleged a claim against ESD under § 1986 for failure to prevent a civil rights conspiracy. "Liability under § 1986 is derivative of § 1985 liability, [and] there can be no violation of § 1986 without a violation of § 1985." *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d Cir. 1992). Thus, where a predicate § 1985 claim is unavailable to a plaintiff, an action under § 1986 is also unavailable. See *Ladson v. Ulltra E. Parking Corp.*, 853 F. Supp. 699, 704 (S.D.N.Y. 1994).

**The Claim under New York Executive Law § 296 is Dismissed**

The provision of New York's Human Rights Law ("NYHRL")
under which Plaintiff seeks relief applies only to employers.
Because the Plaintiff does not allege she was an employee or
otherwise had an employment relationship with ESD, her NYHRL
claim is dismissed.

Executive Law § 296 explicitly applies to employers.
See N.Y. Exec. Law § 296(1)(a) ("It shall be an unlawful
discriminatory practice . . . [f]or an employer or licensing
agency . . . ."); Am. Compl. ¶ 199. Courts in the Second Circuit
"typically treat Title VII and NYHRL discrimination claims as
analytically identical, applying the same standard of proof to
both claims." *Salomon v. Our Lady of Victory Hosp.*, 514 F.3d
217, 226 n.9 (2d Cir. 2008). Thus, NYHRL's "proscriptions
against unlawful employment discrimination apply solely to
employees." *Tagare v. Nynex Network Sys. Co.*, 994 F. Supp. 149,
159 (S.D.N.Y. 1997).

The "employee" requirement under Title VII and the
NYHRL requires an employment relationship with the defendant,
which is absent here. In *Kunzler v. Canon, USA, Inc.,* 257 F.
Supp. 2d 574 (E.D.N.Y. 2003), the plaintiff was a Canon
employee, who had reported alleged sexual harassment by a Canon
supervisor directed at someone else. Id. at 576-77. The

allegedly harassed individual was a Canon customer — not a Canon
employee. Id. Analyzing Plaintiff's claim, the court held:

> Because [the] alleged harassment was directed
> toward a customer, who was neither an employee of
> [the alleged harasser or] Canon, . . . [the
> harassment] . . . [was] not 'an unlawful
> employment practice' prohibited by Title VII and,
> therefore, [could] not satisfy the protected
> activity prong of a retaliation claim.

Id. at 581-82. The court explained that "Title VII extends its
protection to individuals who are in an employment relationship
with their alleged harasser" and noted that "the incident
forming the basis of the retaliation complaint here was not an
allegation that an employee was being harassed by an employer."
Id. at 582.

        The Plaintiff has alleged she was a DMV employee, Am.
Compl. ¶ 54, and that Defendant Hoyt, her alleged harasser, was
an ESD employee. Id. ¶ 26. The Amended Complaint's only
allegations connecting Plaintiff's job at the DMV and Defendant
Hoyt's job at ESD are that he responded to Plaintiff's email
inquiry for help and "offered to find [her] a job in New York
State," Am. Compl. ¶¶ 38-40, and that he "had the power as
Regional President of the Empire State Development Corporation
to hire, fire[,] and supervise Plaintiff Cater" at the DMV. Id.

¶ 61. These allegations do not establish an employment relationship between Defendant Hoyt and the Plaintiff or between ESD and the Plaintiff.

**Conclusion**

Because the Amended Complaint fails to allege cognizable causes of action against ESD, as set forth above, Plaintiff's First, Fifth, Sixth, Seventh, and Eighth Causes of Action against ESD are dismissed, with prejudice.

It is so ordered.

**New York, NY**
~~**January**~~ **, 2019**
*February 4*

**ROBERT W. SWEET**
**U.S.D.J.**